IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES W.,[1]  <br>  <br>      **Plaintiff,**  <br>  <br>    v.  <br>  <br>ANDREW SAUL, Commissioner of  <br>Social Security,[2]  <br>  <br>      **Defendant.** | No. 19 C 1758  <br>  <br>Magistrate Judge Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff James W.'s application for Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 19, Pl.'s Mem.] is granted, the Commissioner's cross-motion for summary judgment [Dkt. 26, Def.'s Mot.] is denied, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**BACKGROUND**

**I.    Procedural History**

On April 25, 2013, Plaintiff filed a claim for SSI, alleging disability beginning April 1, 2003. [Dkt. 12-1, R. 13-14.] Plaintiff's claim was denied initially and upon reconsideration, and

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul has been substituted for his predecessor.

again following a hearing before an Administrative Law Judge ("ALJ"), which was held on September 30, 2015. [*Id*. at 172.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [*Id*.] A vocational expert ("VE") also testified. [*Id*.] On March 22, 2016, the ALJ denied Plaintiff's claim for SSI, finding him not disabled under the Social Security Act. [*Id.* at 172-189.] On March 15, 2017, the Appeals Council issued a remand order, instructing the ALJ to: (1) give further consideration to Plaintiff's maximum residual functional capacity and to provide an appropriate rationale with specific references to evidence of record supporting the assessed limitations; (2) obtain evidence from the VE if warranted clarifying the effect of the assessed limitations on the claimant's occupational base; and (3) and to evaluate the third party function report provided by Plaintiff's father. [*Id.* at 191-92.]

A second hearing was conducted on October 19, 2017. [*Id.* at 13.] Plaintiff again personally appeared and was represented by counsel. [*Id.*] VE Brian L. Harman also testified. [*Id.*] On November 24, 2017, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [*Id.* at 14.] The Social Security Administration Appeals Council subsequently denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 15-23.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his application date of April 25, 2013. [*Id.* at 15.] At step two, the ALJ concluded that Plaintiff had the severe impairments of anxiety, depression, and schizophrenia. [*Id.*] The ALJ acknowledged Plaintiff's diagnoses of hypertension,

2

diverticulitis, and gout, but found them to be non-severe impairments with no more than a minimal effect on Plaintiff's ability to do physical or mental work. [*Id.* at 15-16.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [*Id.* at 16-17.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations: "simple routine tasks work with the ability to perform only simple work related decisions, with the ability to respond appropriately to co-workers and supervisors frequently, and the ability to respond appropriately to the general public only occasionally." [*Id.* 17-21.] At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a salesperson or bouncer. [*Id.* at 21.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy such as a hand packager, parts picker, router or mail sorter, leading to the finding that Plaintiff is not disabled under the Social Security Act. [*Id.* at 22.]

## DISCUSSION

### I.  Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for

which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide

4

some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II. Analysis**

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, assessing Plaintiff's subjective symptom complaints as inconsistent with the record evidence, and failing to account for Plaintiff's moderate limitations in concentration, persistence, and pace in the RFC. [Pl.'s Mem.] The Commissioner argues in opposition that the ALJ appropriately weighed the medical opinion evidence and assessed Plaintiff's subjective complaints, and that he carefully crafted an RFC that considered all of Plaintiff's limitations, including in concentration, persistence, and pace. [Dkt. 27, Def.'s Mem.] After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in evaluating the opinion evidence of Plaintiff's treating physician, Dr. Andrea Ward, and erred in failing to account for Plaintiff's concentration, persistence, and pace limitations. Because these failures alone warrant remand, the Court does not reach Plaintiff's additional arguments.

*Treating Physician's Opinion*

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Gerstner v. Berryhill*,

879 F.3d 257, 261 (7th Cir. 2018).[3] More weight is given to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. 20 C.F.R. § 404.1527(c); *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). If a treating physician's opinion is not given controlling weight, the ALJ must determine what value the assessment merits. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). The regulations prescribe that the ALJ is to evaluate medical opinions according to the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527(c). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation omitted). Further, an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record, a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Where the ALJ rejects a treating physician's opinion, she is "required to provide a sound explanation." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *accord Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

In this case, the ALJ assigned some weight to the opinion of the state agency's consulting medical expert without discussing its substance, and concluded without reference to any particular medical record that the consulting doctor's opinion was consistent with the record as a whole, and

---

[3] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2013, and therefore the ALJ was required to apply the former treating physician rule.

6

rendered with adequate consideration of Plaintiff's subjective complaints. [R. 20.] In contrast, the ALJ assigned little weight to the opinions of each of Plaintiff's treating physicians: (1) Dr. Ward, who the ALJ incorrectly identified as Dr. Feingold[4]; (2) Dr. Chikhman[5], who the ALJ incorrectly identified as Dr. White; and (3) Dr. Metzner. [R. 19-20.] Plaintiff challenges each of these determinations, but the Court only discusses the first as it alone renders deficient the ALJ's mental RFC determination.

In her September 18, 2013, medical source statement, Dr. Ward opined that Plaintiff's condition impacted his ability to sustain concentration and attention resulting in a frequent failure to complete tasks. [R. 656-57.] She itemized Plaintiff's symptoms as follows: (1) his depressive syndrome symptoms include sleep disturbance, decreased energy, difficulty concentrating/thinking, hallucinations, delusion or paranoid thinking and feelings of guilt or worthlessness; (2) his anxiety related disorder symptoms include a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; (3) his personality disorder symptoms include pathological dependence, passivity or aggressivity, pathologically inappropriate suspiciousness or hostility, and persistent disturbances of mood/affect; and (4) his schizophrenic, paranoid, or other psychotic disorder include delusions, hallucinations, or paranoia. [R. 656-60.] Dr. Ward further opined that Plaintiff's depressive and personality disorders caused him mild restrictions of activities of daily living, and marked difficulties in maintaining concentration, persistence, and pace, as well as social

---

[4] The parties agree that the ALJ's discussion of the opinion of "Dr. Feingold" was intended to refer to that of Dr. Ward. [*See* Pl.'s Mem. at 9; Def.'s Resp. at 6.] Dr. Ward's opinion had been provided on a questionnaire form that includes the name and address of Plaintiff's prior counsel, Mr. Feingold. [*See* R. 656-60.]

[5] The parties agree that the cited opinion was not attributable to Dr. White, but they disagree as to whether the handwritten name on the record says Chikhman. [*See* Pl.'s Reply at 4; Def.'s Resp. at 8-9.] Because the Court need not resolve this dispute, it adopts the name for ease of reference.

7

functioning, and that his psychotic disorder caused him mild restrictions of activities of daily living, and extreme difficulties in maintaining concentration, persistence, and pace, as well as social functioning. [R. 658-60.]

The ALJ concluded that Dr. Ward's opinion merited little weight for three asserted reasons: (1) she had only treated Plaintiff for four months at the time she provided her opinion; (2) her opinion was not supported by contemporaneous medical records; and (3) it failed to address Plaintiff's synthetic marijuana use as a factor in his exacerbated symptoms. [*See* R. 19, citing R. 510, 570, and 598.] None of these reasons provide a sound explanation for the ALJ's determination. *See Roddy*, 705 F.3d 636.

It is without dispute that the ALJ must take the length of a treatment relationship into consideration in assessing the weight to afford a medical opinion. *See* 20 C.F.R. § 416.927(c). More weight is generally given to the opinions of a claimant's treating physician, and "the longer a treating source has treated [the claimant] and the more times you have been seen by a treating source, the more weight [the agency] will give to the source's medical opinion." C.F.R. § 416.927(c)(2). More weight is generally given to medical opinion from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.*

To the extent that the ALJ concluded that a four-month treatment relationship was not a sufficient time to adequately develop a longitudinal picture of Plaintiff's impairments, the ALJ did not say so, or explain such a conclusion. [*See* R. 19.] As Plaintiff observes, the ALJ gave more weight to a state agency doctor who had never examined Plaintiff at all. [*See* Pl.'s Mem. at 7.]

8

Of course, the ALJ was free to credit the non-treating physician's opinion over a treating one, but he was required to explain with greater care why he rejected the opinion of a physician who had treated Plaintiff for some time and knew his condition well in favor of the non-examining agency physician. *See* 20 C.F.R. § 416.927(c); *Scott,* 647 F.3d at 739.

In concluding that Dr. Ward's opinion was not well supported by the record, the ALJ cited three treatment notes: two reflecting psychiatric care, and one documenting a gout-related office visit. [*See* R. 19.] According to the ALJ, the notes demonstrated that contemporaneous mental examinations had found Plaintiff with "mild depression, moderate anxiety, intact memory, intact attention, and full range of thought with no thought of helplessness or worthlessness." [*Id.*] The cited notes, however, do not undermine Dr. Ward's opinion, and the ALJ did not explain why he believed otherwise. [*See* R. 19, citing R. 510, 560, 598.] Further, a review of the records suggests that the ALJ selectively referenced portions of them without acknowledging the remainder. "An ALJ cannot recite only the evidence that supports his conclusion while ignoring contrary evidence." *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016).

The first cited treatment note, dated two-weeks prior to the start of Plaintiff's treatment with Dr. Ward, documents an April 21, 2013, treatment visit while Plaintiff was in-patient for psychosis. [*See* R. 510.] Rather than undermine Dr. Ward's opinion, however, it supports it in that it not only acknowledges Plaintiff's depression and anxiety as the ALJ observed, but also his psychosis, substance abuse psychosis, experience of auditory hallucinations earlier that same day, and then-recent suicide attempt. [*See id.*] To the extent the ALJ concluded that this note contradicted Dr. Ward's opinion, the only potential inconsistency is that it referred to Plaintiff's denial in single examination of feelings of helplessness or worthlessness, while Dr. Ward had noted that Plaintiff suffered from feelings of guilt or worthlessness. [*Compare* R. 510 and 658.]

9

Dr. Ward did not opine that Plaintiff experiences those feelings constantly, however, and the ALJ did not explain why he reasoned that the denial of such feelings during a single examination provided a sufficient basis to discount Dr. Ward's opinion on this point, let alone in its entirety. [*See* R. 19.] As the Seventh Circuit has repeatedly observed, "[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710. Indeed, Dr. Ward expressly noted in the opinion statement she provided that Plaintiff experienced "good days and bad days." [*See* R. 656.] Further, Plaintiff's feelings of hopelessness were reflected in other treatment notes. [*See* R. 691, 1333.]

The second cited treatment note similarly fails to undermine Dr. Ward's opinion, and the ALJ did not explain why he thought otherwise. [R. 19, 569-571.] The note reflects Plaintiff's examination on the day he was released from inpatient treatment for psychosis. [*See* R. 569-71.] To the extent that the ALJ cited this record to support the conclusion that Plaintiff's memory and attention were "intact," the ALJ did not explain how this observation contradicted or otherwise undermined Dr. Ward's opinion. [R. 19.] Further, in addition to the referenced observation, the note also describes Plaintiff's feelings of paranoia, observing that his "level of organization is still at issue, and is reflected in his rather tangential speech." [*See id*.] Here too it appears that the ALJ selected portions of the note to support his conclusion without consideration of the remainder. An ALJ must not "cherry-pick" from medical records to support a denial of benefits. *See Scott*, 647 F.3d at 740; *Meuser*, 838 F.3d at 912 (noting selective recitation "is especially problematic" where mental illness is at issue).

Nor does the final cited record support the ALJ's decision to discount Dr. Ward's opinion. This note reflects a May 2013 follow-up visit for gout treatment, not psychiatric care. [*See* R. 597-

10

600.] The only reference it contains to a psychiatric assessment is the observation of Plaintiff's "cooperative, appropriate mood and affect." [*See* R. 598.] It is unclear why the ALJ believed that this notation undermined Dr. Ward's opinion, and the ALJ provided no explanation. [*See* R. 19.] If the ALJ believed that cooperative, appropriate mood and affect during an examination by a physician treating Plaintiff's gout somehow cast doubt on Plaintiff's psychiatrist's opinion as to Plaintiff's psychiatric conditions and related mental functioning, he was obliged to explain his rationale. *Roddy*, 705 F.3d at 636; *Punzio*, 630 F.3d at 710; *see also Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("[T]here is no reason to expect a doctor asked about an eye problem, or a back pain, or an infection of the urinary tract to diagnose depression[.]").

Finally, the ALJ did not explain why a lack of reference to synthetic marijuana in exacerbating Plaintiff's symptoms would be a sound reason for discounting Dr. Ward's opinion, and notwithstanding the Commissioner's argument, it is not clear that Dr. Ward made such an omission. [*See* R. 19, 656-660.] Her medical source statement noted Plaintiff's diagnosis as "Psychotic Disorder NOS – R/O SIPD," which appears to mean, "Psychotic Disorder Not Otherwise Specified – Rule Out Substance Induced Psychotic Disorder." [R. 656.] Dr. Ward's contemporaneous office notes reflected Plaintiff's diagnoses of psychosis, cannabis and synthetic cannabis use, and history of alcohol abuse, and noted Plaintiff's belief that synthetic marijuana had triggered his psychotic symptoms. [*See* R. 594-95.] Without an explanation as to why the ALJ believed Dr. Ward's opinion statement required addressing synthetic marijuana use as a factor in exacerbating symptoms, the Court cannot trace the path of his reasoning. *See Scott*, 297 F.3d at 595.

The Commissioner argues, however, that it was reasonable for the ALJ to expect "an explanation of the catalyst" of Plaintiff's allegedly disabling symptoms from his treating

psychiatrist, and thus to discount her opinion because it lacked one. [*See* Def.'s Mem. at 3, 7-8, citing R. 18-19.] But this argument begs the question of whether record evidence supported the ALJ's conclusion that Plaintiff's psychosis was synthetic drug induced. [*See* R. 18.] The medical records cited by the ALJ, however, fail to provide such support. [*Id.*, citing R. 513, 551, 561, 563, 569.] Instead, each note reflects either (1) both a diagnosis of psychosis NOS (not otherwise specified) and of substance induced psychosis, or (2) a diagnosis—in similar fashion to Dr. Ward's notation—of psychosis NOS, "R/O" substance induced psychosis. [*Id.*] Without such record support, and given Dr. Ward's contemporaneous notes reflecting Plaintiff's synthetic drug use, the ALJ failed to provide a sound explanation for his decision. *See Roddy*, 705 F.3d at 636; *see also Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (error for ALJ to rely on own assessment of significance of medical findings in decision to discount treating physician's opinion.)

The Court is equally unpersuaded by the Commissioner's argument that Dr. Ward should have listed synthetic marijuana as a trigger of Plaintiff's symptoms because the form invited such discussion. Instead, the medical source statement form Dr. Ward completed asked in checkbox format whether any of six specifically listed situations (such as "encounters with other people," or "dealing with family") triggered Plaintiff's symptoms, and provided no space for the discussion of additional potential triggers such as synthetic drugs. [R. 656.]

Without good reasons to discount Dr. Ward's medical opinion, the ALJ failed to support his decision with substantial evidence. *See Meuser*, 838 F.3d at 910 (substantial evidence standard is "not satisfied unless the ALJ has adequately supported his conclusions.").

***Concentration, Persistence, and Pace***

According to Plaintiff, the ALJ failed to account for his moderate concentration, persistence, and pace ("CPP") limitations in the questions asked of the VE and in formulating

12

Plaintiff's RFC. [Pl.'s Mem. at 15-16; Pl's Reply at 10-12.] The Commissioner does not dispute that the ALJ did not expressly refer to CPP limitations in questioning the VE, but argues that the ALJ appropriately accounted for them both in framing the hypotheticals to the VE and in crafting Plaintiff's RFC by limiting Plaintiff to simple, routine work with simple work-related decisions. [Def.'s Resp. at 13-15.]

It is well settled that both the RFC and the hypothetical question presented to a VE must incorporate the "totality of a claimant's limitations," including any "deficiencies of concentration, persistence and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *accord Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). As a matter of form, the ALJ need not use this exact terminology in formulating questions to the VE, but as a matter of substance, "the ALJ must ensure that the VE is apprised fully of the claimant's limitations so that the VE can exclude those jobs that the claimant would be unable to perform." *Crump*, 932 F.3d at 570 (internal quotation omitted); *accord O'Connor-Spinner*, 627 F.3d at 619-20. "In most cases, however, employing terms like 'simple, repetitive tasks,' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner*, 627 F.3d at 620. This is because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* When it comes to the RFC finding, the Seventh Circuit has further "underscored that the ALJ may not generally rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump*, 932 F.3d at 570 (internal quotation omitted). "When the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of jobs." *Id.*

13

At Plaintiff's administrative hearing, the ALJ presented the VE with a series of hypotheticals asking whether a person with limitations like Plaintiff's could perform jobs in the national economy. [R. 49-51.] Instead of including in his questioning that the person would have the moderate limitations in concentration, persistence, and pace that the ALJ had found from evidence in the record [*see* R. 17], the ALJ's hypotheticals limited the person to "performing simple and routine tasks." [*See* R. 50.] So framed, the VE testified that a range of jobs existed in the national economy. The VE, testified further, however, that those jobs would not be available to the same hypothetical person if that person were to be off task more than 15% of the workday, miss more than one day of work per month, or unexpectedly miss work due to in-patient psychiatric treatment lasting from three days to two weeks a couple of times per year. [R. 51-52.]

Plaintiff argues that the ALJ's formulation was precisely the sort that the Seventh Circuit has repeatedly found deficient in accounting for CPP limitations. [Pl.'s Mem. at 15.] Not so, says the Commissioner, asserting that unlike Plaintiff's cited authorities, the ALJ's formulation was not without evidentiary basis, but rather was consistent with the concentration limitations assessed by state agency physician, Dr. Howard Tin. [*Id.*] Because the ALJ's questions to the VE effectively translated Dr. Tin's opinion, the Commissioner reasons, there was no error. [Def.'s Resp. at 13-15.] This Court does not agree.

First, the ALJ's express reasoning contradicts the Commissioner's assertion. The ALJ reasoned that Plaintiff had moderate CPP limitations due to his "need for medication management and ongoing depressive symptomology," and explained that, "[I]n consideration of the claimant's intermittent symptoms, emergency room visits – due to medication non-compliance and abnormal mental status examinations in July of 2017, I have reduced the claimant's functioning to simple routine tasks with the ability to perform only simple work related decisions with social limitations

14

specifically outlined [in the RFC]." [R. 17, 19.] Second, even if the ALJ had relied on Dr. Tin's assessment, Dr. Tin opined that Plaintiff had sustained concentration and persistence limitations, not understanding and memory limitations, and opined that although Plaintiff could perform simple tasks, he had "difficulty carrying out instructions and maintaining attention and concentration for extended periods of time." [R. 163, 165.] The limitation to simple and routine tasks, therefore, neither translated the CPP limitations that Dr. Tin assessed nor accommodated the limitations that the ALJ had identified. *See Crump*, 932 F.3d at 570 ("[O]bserving that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift; *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (confining claimant to simple, routine tasks and limited interactions with others fails to accommodate for temperamental deficiencies and limitations in CPP).

The Commissioner's argument notwithstanding, this case is not like his cited authorities, *Burmeister v. Berryhill*, 920 F.3d 507 (7th Cir. 2019) and *Jozefyk v. Berryhill*, 923 F.3d at 492 (7th Cir. 2019). In *Burmeister*, there was no medical opinion in the record that the plaintiff was unable to concentrate at work, and the Seventh Circuit found that the ALJ's questions to the VE were consistent with those limitations that were supported by the record. 920 F.3d at 510-11. Similarly, in *Jozefyk*, the Seventh Circuit found that the ALJ's assessment considered all of the plaintiff's limitations that were supported by record evidence, noting that neither the medical records nor the plaintiff's testimony had supported additional CPP restrictions. 923 F.3d at 497. To the contrary here, Dr. Ward specifically opined that Plaintiff's condition impacted his ability to sustain concentration and attention resulting in a frequent failure to complete tasks [R. 657], that his depressive syndrome and personality disorder caused marked difficulties on his ability to maintain

15

CPP [R. 658-59], and that his psychosis caused extreme difficulties on his ability to maintain CPP [R. 660]. Plaintiff testified about his concentration difficulties and memory issues [R. 46], both of which were similarly reflected in medical records. [*See, e.g.,* R 421-24, 433, 526.] Rather than tailor the RFC to fit all of Plaintiff's limitations that were supported by the record, the ALJ erred by relying on a shorthand phrase that did not fully encompass Plaintiff's mental limitations. Accordingly, the VE's assessment of jobs available to Plaintiff failed to account for all of his limitations, and the ALJ's corresponding RFC determination lacked substantial evidence. *See Crump*, 932 F.3d at 570-71.

For all of the reasons discussed above, this case requires remand. The Court emphasizes that the Commissioner should not assume that the other issues raised by Plaintiff were omitted from this opinion because no error was found. Indeed, the Court directs the Commissioner that care should be taken on remand to ensure that his analysis is complete.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [19] is granted, and the Commissioner's motion for summary judgment [26] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 01/20/2021

BETH W. JANTZ
United States Magistrate Judge